IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MISTY K.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Case No. 2:21-CV-548 <br><br> Judge Graham <br><br> Magistrate Judge Jolson |

**OPINION AND ORDER**

Plaintiff Misty K. brings this action under 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income. This matter is before the Court for consideration of Plaintiff's August 8, 2022 objections to the July 25, 2022 report and recommendation ("R&R") of the Magistrate Judge, recommending that the Court affirm the Commissioner's non-disability determination and dismiss the matter. For the reasons stated below, the Court overrules Plaintiff's objections and adopts the Magistrate Judge's R&R.

**I.   Background**

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income on April 23, 2018, asserting that she became disabled on June 26, 2017 due to stroke and blindness.

**A.  Relevant Hearing Testimony**

The administrative law judge ("ALJ") summarized Plaintiff's testimony as follows:

[Plaintiff] premised her claim for disability on stroke and blindness (3E/2). At the hearing, [Plaintiff] testified that she is unable to work due to her vision impairments and anxiety. As far as her vision symptoms, [Plaintiff] testified that she has eye

1

pain, double vision, floaters and blurry vision. She initially reported that she has no depth perception or peripheral vision, but later indicated that she does have some peripheral vision in her left eye. [Plaintiff] testified that she has frequent headaches and dizziness.

[Plaintiff] said that she was prescribed prism stickers to wear on her glasses, but she does not use the stickers because it makes her feel sick. She said that she also has a prescription for a walking cane. [Plaintiff] testified that she bumps into walls and objects and falls down "a couple times" during a typical week. As far as her mental symptoms, [Plaintiff] testified that she has significant anxiety, especially at night. She reported that she has received counseling and takes medications for her symptoms. [Plaintiff] testified that she lives alone. She said that she is unable to wash dishes, cut up food or fill a glass due to her vision impairment. However, she said that that [sic] she often sweeps the floor and works in her yard. She said that she often rearranges her furniture because she has tunnel vision and wants to feel like she has more room in her living room.

Tr. 18.

**B. Relevant Medical History**

The ALJ summarized Plaintiff's medical records related to her vision impairment as follows:

In June 2017, [Plaintiff] was admitted to the hospital for intracranial hemorrhage and multiple embolic strokes (13F/8). She subsequently developed vision problems, including left eye retinal detachment with multiple breaks, which required numerous eye surgeries. For example, [Plaintiff] underwent left eye vitrectomy for retinal attachment in August 2017 (14F/132, 182). In October 2017, she underwent vitrectomy and retinectomy for persistent retinal detachment of the left eye (2F/21).

In July 2018, [Plaintiff] had phacoemulsification with posterior chamber intraocular lens placement of the left eye (14F/59). In October 2018, [Plaintiff] underwent a YAG capsulotomy on the left eye for treatment of posterior capsular opacification (14F/41).

In August 2018, [Plaintiff] had an internal medicine consultative examination with Jameson Mattingly, M.D., at the request of the State agency (see generally 3F). Upon physical examination, [Plaintiff] walked with a normal gait without an assistive device and straight leg raise testing was negative bilaterally. She demonstrated 5/5 strength in the upper and lower extremities (3F/6). [Plaintiff] had 5/5 gross grip strength, normal fine fingering and reported no issues with picking up a coin, a key, writing, holding a cup, opening a jar, buttoning or unbuttoning, using a zipper or opening a door (3F/7). [Plaintiff] also demonstrated normal range

of motion in her cervical spine, shoulder, elbow, wrist, hands, fingers, dorsolumbar spine, hip, knee, and ankle. Dr. Mattingly assessed that [Plaintiff's] visual acuity was "greater than 2200" bilaterally without correction, but concluded the extent of [Plaintiff's] vision was unclear (3F/6).

Progress notes from the OSU Havener Eye Institute document [Plaintiff's] reports of spots and/or floaters in the left eye, flashes of light and trouble with depth perception and double vision (6F/36; 10F/1; 14F/8-9, 43). On examination, in August 2018, [Plaintiff's] distance visual acuity without correction was 20/70+1 on the right and 20/300 on the left (14F/44).

In October 2018, [Plaintiff] underwent a consultative ophthalmology examination by Jon Cooperrider II, O.D. (see generally 7F). Dr. Cooperrider determined that [Plaintiff's] visual acuity for distance and reading was hand movements at 16 inches with best correction (7F/1). Dr. Cooperrider also determined that [Plaintiff's] visual fields were abnormal, although it was indicated that the visual field testing had "low test reliability" (7F/6).

In May 2019, [Plaintiff] underwent a neuro ophthalmic evaluation with Dr. Chrisoula Morris, O.D., for a glasses prescription (14F/8-9). It was noted that [Plaintiff] used to wear glasses with a prism in them, but that her regular optometrist never got it correct so she did not wear any prescription glasses. [Plaintiff's] distance visual acuity without correction was 20/40 on the right and 20/200 on the left (14F/11). Based upon the results of the examination, [Plaintiff] was prescribed an updated glasses prescription with a prism (14F/11). It was noted that [Plaintiff] achieved single vision based upon the prescription combination that was demonstrated to her in the phoropter during the examination (14F/12).

In August 2019, [Plaintiff] followed up with Dr. Michael Wells, M.D., for reports of eye flashes and floaters (14F/3). [Plaintiff] reported that she did not like the new glasses she received after seeing Dr. Morris (14F/6). She indicated that her overall vision was unchanged but that it was "much better when she is using her drops" (14F/3). She complained of left eye pain and headaches. Her distance visual acuity without correction was 20/60-2 on the right and 20/400 on the left (14F/3). Optical coherence tomography (OCT) imaging indicated that [Plaintiff] had persistent central subretinal fluid in the right eye but it may be slightly improved. It was noted that [Plaintiff] had a clearer view posteriorly since she underwent surgeries in July 2018 and November 2018 (14F/5). Ocular hypertension was also found to be under good control on Combigan medication. In terms of [Plaintiff's] history of retinal detachment, it was noted that her retina was mostly attached, although there was a small area of subretinal fluid. Finally, [Plaintiff's] subretinal/choroidal abscesses infection was resolved.

Tr. 18-20.

### C. The ALJ's Decision

The ALJ found Plaintiff to have the following severe impairments: depression; anxiety; status post cerebrovascular accident; and posterior capsular opacification of left eye, obscuring vision. Tr. 14. Yet, the ALJ ultimately concluded that Plaintiff's impairments do not, in isolation or in combination, meet or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 15.

In reaching this conclusion, the ALJ began with listing 2.02, Loss of Central Visual Acuity. *Id.* He concluded that Plaintiff's impairments do not meet listing 2.02 because "the remaining vision in the better eye after best correction is not 20/200 or less." *Id.* He noted that Dr. Mattingly found Plaintiff's vision to be 2200 bilaterally but dismissed the finding because "this designation is not consistent with standard optical terminology [and it] . . . was based upon a one-time examination by a non-treating source." *Id.* Instead, the ALJ credited Dr. Well's finding that Plaintiff's better eye's distance visual acuity was 20/70 in February 2019 and 20/60-2 in August 2019. *Id.*

The ALJ next considered listing 2.03. He concluded that Plaintiff's visual impairments do not meet listing 2.03 because:

> [T]he record fails to demonstrate contraction of the visual field in the better eye with: the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; or an MD [mean deviation or defect] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d); or a visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

Tr. 16. He noted that:

> While [Dr. Cooperrider's] ophthalmology consultative examination indicated the claimant's visual fields were abnormal, the results did not demonstrate listing severity (7F/5-6). Moreover, it was noted there was "low test reliability" with the visual field test (7F/6).

4

*Id.*

The ALJ then concluded that Plaintiff does not meet listing 11.04 because she does not have sensory or motor aphasia resulting in ineffective speech or communication; or significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbances of gross and dexterous movements, or gain and station more than three months post-vascular accident. *Id.*

The ALJ assessed Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: restricted from hazards such as heights or machinery, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles; never required to operate a motor vehicle during the course of a workday; can never use ladders, ropes or scaffolds; occasional near and far acuity and occasional depth perception in left eye; and limited to simple tasks and routine and repetitive tasks.

Tr. 17. He determined that given Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as a laundry worker, kitchen helper, and janitor. Tr. 22-23. Ultimately, the ALJ concluded that the Plaintiff has not been under a disability, as defined in the Social Security Act, since June 26, 2017. Tr. 23.

### D. The Instant Case

Plaintiff filed the instant case appealing the Commissioner's decision on February 5, 2021. She filed a statement of errors asserting two issues: (1) the ALJ improperly rejected the opinions of consultative examiners Dr. Martingly and Dr. Cooperrideo and (2) a Separation of Powers issue renders the ALJ's decision invalid. The Magistrate Judge issued a R&R, finding that the ALJ properly considered and rejected the opinions of Dr. Martingly and Dr. Cooperrideo and that no Separation of Powers exists. The R&R recommends that the Court affirm the Commissioner's

decision. Plaintiff timely filed objections to the Magistrate Judge's conclusion that the ALJ properly considered and rejected the opinions of Dr. Martingly and Dr. Cooperrideo.

## II. Standard of Review

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Even if supported by substantial evidence, however, "a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III. Plaintiff's Objections

Plaintiff objects only to the Magistrate Judge's conclusion that the ALJ properly considered and rejected Dr. Mattingly's and Dr. Cooperrideo's opinions.

ALJs consider medical opinions when making disability determinations. *See* 20 CFR §§ 404.1513(a)(2), 416.913(a)(2). The evidentiary weight of medical opinions is determined by

considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors and are generally the only ones on which ALJs are required to articulate. 20 C.F.R. § 404.1520c(b)(2). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinion." *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *2 (E.D. Mich. Mar. 30, 2022) (Cleaned up). As for the consistency factor: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

### A. Dr. Mattingly

Dr. Mattingly, an internal medicine consultative examiner, examined Plaintiff on August 19, 2018 and prepared a disability evaluation. Tr. 1635. He noted in the impression section of his evaluation that:

> This is a 39-year-old claimant with a history of vision issues. Her vision exam was significant for greater than 2200 bilaterally. Was able to see fine instructions up close quite well. Because of this it is unclear the extent of her vision as far if she is truly just seeing shapes and shadows or if she is seeing actually more detail. Contributing factors include this claimant should be able to walk two out of eight hours in a day. The patient could probably be on her feet for a combined total of six to eight hours in a day. She probably could carry les than ten pounds frequently and could carry more than then pounds on occasion. Other limitations and function include anything that requires vision.

Tr. 1637. The ALJ concluded that:

7

> This opinion is not persuasive. The opinion is not consistent with contemporaneous examination notes, as well as not generally supported by the record as a whole. For example, Dr. Mattingly assessed lifting limitations that are not supported by unremarkable examination findings of normal gait, 5/5 strength in the upper and lower extremities and normal range of motion (3F/6).

Tr. 21.

The Magistrate Judge concluded that the ALJ properly discussed the supportability and consistency factors. The Court agrees. As for supportability, the ALJ explained that Dr. Mattingly's opinion is not generally supported by contemporaneous examination notes. This is correct. Dr. Mattingly opined that Plaintiff requires standing and lifting restrictions without explanation. And his conclusion that Plaintiff requires limitations on "anything that requires vision" is contradicted by his statement that "it is unclear the extent of [Plaintiff's] vision impairment." Plaintiff asserts in her objections that the ALJ and Magistrate Judge confused the purpose of Dr. Mattingly's limitations – that the limitations were suggested based solely on her severe vision problems, not her physical health in a more traditional since. Even assuming this to be the case, Dr. Mattingly's opinion is not supported by his own notes because his notes express doubt as to the level of Plaintiff's vision impairment.

As for consistency, the ALJ thoroughly analyzed Plaintiff's vision impairments.[1] Tr. 15-16, 18-20. Within this analysis, he noted the following:

> Progress notes from the OSU Havener Eye Institute document the claimant's reports of spots and/or floaters in the left eye, flashes of light and trouble with depth perception and double vision (6F/36; 10F/1; 14F/8-9, 43). On examination, in August 2018, the claimant's distance visual acuity without correction was 20/70+1 on the right and 20/300 on the left (14F/44).

---

[1] Plaintiff asserts that it is improper for the Court to consider the ALJ's discussion of her vision impairments because the ALJ did not reproduce the discussion when explaining why Dr. Mattingly's opinion was inconsistent. She is mistaken. ALJs are not required to reproduce lists of treatment records when explaining why an opinion was inconsistent with a record; "it suffices that [the ALJ] listed them elsewhere in [his] opinion." *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (citation omitted).

* * *

> In May 2019, the claimant underwent a neuro ophthalmic evaluation with Dr. Chrisoula Morris, O.D., for a glasses prescription (14F/8-9). It was noted that the claimant used to wear glasses with a prism in them, but that her regular optometrist never got it correct so she did not wear any prescription glasses. The claimant's distance visual acuity without correction was 20/40 on the right and 20/200 on the left (14F/11). Based upon the results of the examination, the claimant was prescribed an updated glasses prescription with a prism (14F/11). **It was noted that the claimant achieved single vision based upon the prescription combination that was demonstrated to her in the phoropter during the examination** (14F/12).
>
> In August 2019, the claimant followed up with Dr. Michael Wells, M.D., for reports of eye flashes and floaters (14F/3). The claimant reported that she did not like the new glasses she received after seeing Dr. Morris (14F/6). **She indicated that her overall vision was unchanged but that it was "much better when she is using her drops"** (14F/3). She complained of left eye pain and headaches. Her distance visual acuity without correction was 20/60-2 on the right and 20/400 on the left (14F/3). Optical coherence tomography (OCT) imaging indicated that the claimant had persistent central subretinal fluid in the right eye but it may be slightly improved. It was noted that the claimant had a clearer view posteriorly since she underwent surgeries in July 2018 and November 2018 (14F/5). Ocular hypertension was also found to be under good control on Combigan medication. In terms of the claimant's history of retinal detachment, it was noted that her retina was mostly attached, although there was a small area of subretinal fluid. Finally, the claimant's subretinal/choroidal abscesses infection was resolved.

Tr. 19 – 20 (emphasis added).

Plaintiff asserts that this discussion is inadequate because the ALJ failed to explain how his conclusion is not contradicted by Plaintiff's need for prescribed glasses, trouble with floaters, eye pain, double vision, blurry vision, drastically fluctuating vision, and bumping into objects and walls while ambulating. But the ALJ did address these complaints. He reviewed all of the medical evidence and found that "treatment records establish that the claimant does not have double vision with proper glasses and her vision is improved when she is using prescribed eye drops." Tr. 20. In short, the ALJ's discussion of the medical evidence amply supports his conclusion that Dr.

9

Mattingly's "opinion is not . . . supported by the record as a whole." Therefore, the Court concludes the ALJ adequately discussed the consistency of Dr. Mattingly's opinion.

### B. Dr. Cooperrider

Dr. Cooperrider, an ophthalmology consultative examiner, evaluated Plaintiff on October 3, 2018. Tr. 1815. He found that Plaintiff's "legal blindness [] prevents most work activities." Tr. 1815. The ALJ found this opinion unpersuasive:

> This opinion is vague and based upon a one-time examination by a non-treating source. Furthermore, it is not supported by the record as a whole. Specifically, Dr. Cooperrider's assessment is not supported by treatment records documenting the claimant's distance visual acuity without correction ranged from 20/40 to 20/70+1 on the right and 20/200 to 20/400 on the left (14F/3, 11, 44). Treatment records establish that the claimant does not have double vision with proper glasses and her vision is improved when with prescribed eye drops (14F/2, 12).

Tr. 21.

Again, the Court agrees with the Magistrate Judge that the ALJ adequately discussed the supportability and consistency factors. As for supportability, the ALJ is correct in describing Dr. Cooperrider's opinion as vague. Dr. Cooperrider merely asserts that that Plaintiff is legally blind and unable to perform most work activities and attaches a few tests. As the Magistrate Judge noted, at least one of these tests calls into question Dr. Cooperrider's conclusion. The Single Field Analysis test for Plaintiff's left eye contains a note that the test is of low reliability. Doc. 12-10 at 138. Dr. Cooperrider also acknowledged that Plaintiff's fixation, an indicator of test reliability, on field testing was poor. *Id.* at 134. Yet, without explaining these issues, Dr. Cooperrider concluded that the visual fields plotted by the field testing was still consistent with the findings. *Id.* In sum, the ALJ adequately discussed the supportability factor by describing Dr. Cooperrider's opinion as vague considering Dr. Cooperrider failed to explain how the tests attached to his opinion, including a test that indicated it was not reliable, influenced his conclusion. As for consistently, the ALJ

specifically referenced medical evidence that indicates Plaintiff has better vision than Dr. Cooperrider represented and that her vision is better yet when using prescribed eye drops.

### IV.     Conclusion

For the reasons stated above, the Court overrules Plaintiff's objections, Doc. 21, adopts and affirms the Magistrate Judge's report and recommendation, Doc. 20, and dismisses this matter. The clerk is directed to enter final judgment in this case.

**IT IS SO ORDERED.**

s/ James L. Graham<br>JAMES L. GRAHAM<br>United States District Judge

DATE: September 22, 2022